

Manhattan
520 Eighth Avenue, 14th Floor
New York, New York 10018
T: 646.430.8295  F: 646.430.8294

Long Island
910 Franklin Avenue, Suite 200
Garden City, New York 11530
T: 516.307.1880  F: 516.307.1879

**George D. Vallas**
gvallas@goodstadtlaw.com

October 15, 2019

**VIA ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

      Re:    <u>Abromavage v. Deutsche Bank Securities Inc, et al., 18-cv-06621 (VEC)</u>

Dear Judge Caproni:

We represent Plaintiff in the above referenced matter. We write jointly with counsel for Deutsche Bank Securities Inc. (the "Bank" or "DBSI"), Jeffrey Bunzel and Mark Hantho (collectively, "Defendants") in advance of the telephone conference scheduled for October 17, 2019 at 2:00 PM regarding (i) Defendants' assertion of attorney-client and work product privilege over a report dated January 15, 2016, authored by Christina Berti, Esq., Director and Associate General Counsel, and Michele Kershenbaum, Vice President, Human Resources, concerning their investigation of Plaintiff's 2015 retaliation complaint (the "2016 Investigation Report"); and (ii) Defendants' withholding of information related to the settlement of claims asserted against the Bank by Jason Gurandiano in an arbitration before FINRA (the "Settlement Information").

      I.    **Investigation Report**

Plaintiff's claims relate to his protected participation in the Bank's investigation of Jason Gurandiano, a former Bank employee, in late Spring 2015 (the "2015 Investigation"). Plaintiff alleges that he informed the investigators that he "personally witnessed Mr. Gurandiano make multiple egregious racist and otherwise discriminatory comments regarding South Asian-American employees of the Bank." Compl. ¶ 20. Plaintiff alleges that Mr. Gurandiano was terminated on July 2, 2015 as a result of the Bank's investigation. Following Mr. Gurandiano's termination, Plaintiff alleges that senior executives at the Bank—who allegedly had close



personal friendships with and a history of protecting Mr. Gurandiano—began retaliating against him for his role in the 2015 Investigation, including by denying him a promised promotion and cutting him out of various deals.

Plaintiff complained about this retaliation to Human Resources in August 2015. Ms. Berti and Ms. Kershenbaum investigated Plaintiff's complaint by interviewing Plaintiff and the individuals whom he accused of retaliation, including Defendant Bunzel, Defendant Hantho, and John Eydenberg, Managing Director. Following those interviews, Ms. Berti drafted the 2016 Investigation Report, dated January 15, 2016, summarizing her conclusions. Ms. Berti also communicated to Mr. Abromavage by email that the Bank had not found any retaliation. In discovery, Plaintiff requested all material related to the Bank's investigation. In response, Defendants produced the interview notes kept by Ms. Berti and Ms. Kershenbaum, and non-privileged emails between them and with Plaintiff, but withheld the Investigation Report, claiming it is protected by the attorney-client privilege and work product doctrine.

According to Plaintiff, to the extent the Investigation Report is privileged at all,[1] Defendants waived the privilege by asserting at least two affirmative defenses that put the reasonableness of the investigation at issue. "When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." *Robinson v. Vineyard Vines*, *LLC*, 15 Civ. 4972 (VB)(JCM), 2016 U.S. Dist. LEXIS 27948, at *12 (S.D.N.Y. Mar. 4, 2016) (internal quotations omitted). "This waiver encompasses 'not only the [investigative] report itself, but [] all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation.'" *Koumoulis v. Indep. Fin. Mktg. Grp.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013) (quoting *Angelone v. Xerox Corp.*, No. 09 Civ. 6019 (CJS) (JWF), 2011 U.S. Dist. LEXIS 109407, at *2 (W.D.N.Y. Sept. 26, 2011)). "Courts have found waiver by implication . . . when a client asserts reliance on an attorney's advice as an element of

---

[1] Courts in this Circuit have found that documents related to internal investigations are privileged only to the extent they are prepared in anticipation of litigation. *See Babbitt v. Koeppel Nissan, Inc.,* No. 18CV5242(NGG)(CLP), 2019 U.S. Dist. LEXIS 122649, at *8 (E.D.N.Y. July 23, 2019) (quoting *Welland v. Trainer*, No. 00 CV 0738, 2001 U.S. Dist. LEXIS 15556, at *2 (S.D.N.Y. Oct. 1, 2001)) (noting finding that "investigation documents produced before an employee was terminated were discoverable, but documents produced after her termination were protected work product, because the focus of the investigation after her termination shifted to a 'need to prepare for the likelihood of litigation'"). Here, the 2016 Investigation Report was completed months before Plaintiff even threatened to initiate any proceedings against Defendants. As such, it could not reasonably be said to have been completed "in anticipation of litigation."



a claim or defense." *Barbini v. First Niagara Bank, N.A.*, 16-cv-7887(NSR)(JCM), 2019 U.S. Dist. LEXIS 72689, at *11 (S.D.N.Y. April 29, 2019) (internal citations omitted).

Here, Defendants assert two affirmative defenses that rely in substantial part on the reasonableness and sufficiency of their investigation. Specifically, Defendants' Seventh Affirmative Defense states that: "Plaintiff's claims are barred because Defendants exercised reasonable care to prevent discrimination, retaliation and harassment and Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by Defendants, to cooperate fully in Defendants' process, or otherwise to avoid harm."[2] Likewise, according to Defendants' Eleventh Affirmative Defense,"[t]hroughout the relevant period, DBSI maintained and complied with well-established policies, programs, and procedures for the prevention and detection of unlawful harassment, discrimination, or retaliatory conduct by its employees."[3]

There is no indication that Defendants intend to abandon these defenses, or will otherwise not be relying on the reasonableness and sufficiency of their investigation into Plaintiff's complaint to support them. *See Robinson*, 2016 U.S. Dist. LEXIS 27948, at *13-14 (quoting *Sealy v. Gruntal & Co.*, No. 94Civ.7948 (KTD)(MHD), 1998 U.S. Dist. LEXIS 15654, 1998 WL 698257, at *5 (S.D.N.Y. Oct. 7, 1998).) ("[I]f a party decides to 'drop[] the asserted defense, . . . there will of course no longer be any basis for implying a waiver'"). Instead, Defendants attempt to have it both ways by producing certain documents related to the investigation—thereby asserting that the investigation was comprehensive and reasonable—but withholding the Investigation Report itself. *See Barbini*, 2019 U.S. Dist. LEXIS 72689, at *11 ("A party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party"). Litigants are not permitted to rely on purportedly privileged information to support their affirmative defenses and then shield that same information from full scrutiny by asserting the

---

[2] *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (nothing that *Faragher/Ellerth* defense allows employer to escape liability "by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided").

[3] *See Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 414 (S.D.N.Y. 2002) (citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999)) (describing *Kolstad* affirmative defense, according to which "[e]mployer liability may be imposed where an employee serving in a managerial capacity commits the wrong within the scope of his employment, unless the discriminatory actions were in contravention of the employer's good faith efforts to comply with Title VII").



privilege over only certain categories of documents. Accordingly, Plaintiff asserts that Defendants should be ordered to produce the 2016 Investigation Report.

**Defendants' Position**

The 2016 Investigation Report is protected from disclosure by the attorney-client and work product privileges. Janice Reznick, Esq., at the time DBSI's global head of employment law, requested the report. A DBSI in-house attorney, Christina Berti, drafted the report in anticipation of litigation and it reflected her legal analysis and mental impressions. Plaintiff claims that the 2016 Investigation Report was not drafted in anticipation of litigation because it purportedly was completed "months before Plaintiff even threatened to initiate any proceedings against Defendants." This is inaccurate. In a November 2, 2015 meeting with DBSI internal and external counsel (which Plaintiff recorded and produced in this litigation), Plaintiff advised that he had retained Andrew Goodstadt as his attorney (the same attorney representing him in this litigation) in connection with the Gurandiano investigation and his internal complaint of retaliation to DBSI. In addition, because Janice Reznick, Esq. requested the report and it was provided to her for purposes of rendering legal advice, it is protected by the attorney-client privilege. Communications between in-house counsel and investigators are protected by the attorney-client privilege where in-house counsel directed the investigation. *Welland v. Trainer*, 00 Civ. 0738 (JSM), 2001 U.S. Dist. LEXIS 15556, at *7-8 (S.D.N.Y. Sep. 28, 2001).[4]

Defendants have not waived privilege as to the Investigation Report. Defendants *are not* asserting the *Faragher/Ellerth* defense in this litigation and hereby withdraw their Seventh Affirmative Defense in their Answer. Thus, as Plaintiff acknowledges, there can "no longer be any basis for implying a waiver" of privilege based on such a defense. *See Robinson*, 2016 U.S. Dist. LEXIS 27948, at *16 (holding that internal investigation documents were protected by work product privilege and privilege was not waived where Defendants "clarified that they never meant to assert a *Faragher/Ellerth* defense, or are at the very least 'dropping the asserted defense,' as to any investigation conducted into Plaintiff's claims on behalf of [employer]").[5]

---

[4] Contrary to Plaintiff's misleading citation in footnote 1, *Welland* did not hold that all "investigation documents produced before an employee was terminated were discoverable," but held that the attorney-client privilege applied to the pre-termination communications between investigators and in-house counsel. 2001 U.S. Dist. LEXIS 15556, at *7.

[5] DBSI's email to Plaintiff communicating the results of the investigation also did not waive the attorney-client or work product privileges. *See Mendez v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, No. 1:12-cv-26-EJL-CWD,



Defendants' assertion of the *Kolstad* defense in their Eleventh Affirmative Defense does not waive the work product or attorney client privilege. None of the cases Plaintiff cites support his position that reliance on a *Kolstad* defense waives privilege. Moreover, Defendants do not intend to support this defense by asserting that they relied on their counsel's advice in conducting an investigation that determined Plaintiff had not been subject to retaliation. That was the conclusion Ms. Berti and Ms. Kershenbaum reached, as reflected in their investigation notes and non-privileged emails, which Defendants have produced. In addition, Plaintiff has deposed Ms. Berti and will depose Ms. Kershenbaum on October 24th. He has had and will soon have another opportunity to ask questions about the factual nature of their investigation. Defendants have not put legal advice at issue in support of a *Kolstad* defense so as to waive privilege over the 2016 Investigation Report. *See Butterworth v. Lab. Corp. of Am. Holdings*, 2010 U.S. Dist. LEXIS 147668, at *20 (M.D. Fla. Dec. 2, 2010) (Defendant did not waive attorney-client or work product privilege with respect to communications with counsel regarding investigation by asserting *Kolstad* defenses where Defendant stated it would not argue that it relied on advice of counsel but would support the defense by evidence of, "*inter alia*, the non-discriminatory factors for plaintiff's termination and the anti-discrimination and open-door policies in place at [Defendant]"); *see also MacKey v. Staples The Office Superstore* LLC, 2010 U.S. Dist. LEXIS 145534, at *28 (D.N.M. Feb. 12, 2010) (plaintiff sought documents concerning in-house attorney's investigation in connection with EEOC charge response for purpose of negating *Kolstad* defense; court held that communications between interviewees and counsel were privileged).

    II.    **Settlement Information**

Following his termination for violating Bank policies, Mr. Gurandiano initiated a FINRA arbitration against the Bank. In discovery, Plaintiff sought information related to any statements regarding Mr. Gurandiano's termination made by the Bank in connection with that arbitration, as well as any information related to the settlement of those claims, including any settlement agreements. Defendants produced a redacted version of its Answering Statement in response to

---

2014 U.S. Dist. LEXIS 94818, at *11 (D. Idaho July 10, 2014) (defendant did not waive attorney-client or work product privilege protecting investigation report by sending email to plaintiff providing him with conclusions of its investigation).



this request, but withheld settlement information and the settlement agreement, on the basis that this information is confidential and not relevant to any claims or defenses in this matter.

According to Plaintiff, the Settlement Agreement is relevant to Plaintiff's claims. Plaintiff asserts that Defendants retaliated against him for participating in the Gurandiano investigation because of the friendship between Mr. Gurandiano and certain senior Bank executives. Critically, Plaintiff alleges that this protective relationship continued even after the Bank was compelled to terminate Mr. Gurandiano in the face of overwhelming evidence of his misconduct. *See* Compl. ¶ 38 (describing Mr. Eydenberg's "ardent support" of Mr. Gurandiano and noting that, following Mr. Gurandiano's termination "bankers who reported to Mr. Eydenberg provided substantive recommendations for Mr. Gurandiano to Royal Bank of Canada . . . in violation of Deutsche Bank's own internal policies"). The terms on which Mr. Gurandiano's claims against the Bank were settled are therefore important to establish the extent to which Mr. Gurandiano continued to receive favorable treatment from Bank executives following his termination.

Insofar as Plaintiff has established the potential relevance of the Settlement Information, Defendants have not advanced a valid basis to withhold it. Judge Gorenstein recently rejected the suggestion that a heightened standard of relevance governs the discoverability of settlement agreements that are not negotiated as part of a Court supervised settlement conference. *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2019 U.S. Dist. LEXIS 139046, at *5 (S.D.N.Y. Aug. 16, 2019). In permitting discovery of settlement communications and agreements related to a separate dispute between a party to the litigation and a third-party, Judge Gorenstein collected a litany of cases standing for the proposition that the "disclosure of settlement discussions and settlement agreements where there was no promise of confidentiality by a court"—such as the Settlement Information here—should be governed by "the 'good cause' standard of Rule 26(c)" rather than any heightened standard. *Id.* at 7 (collecting cases). Importantly, the *Rocky Aspen* Court noted that any confidentiality concerns would be best addressed by the protective order already in place. *Id.* at 10. Likewise, in this matter, any confidentiality concerns Defendants might have are adequately addressed by the Stipulation and Protective Order Regarding Confidential, Proprietary and Privileged Information (Docket No. 25). Accordingly, Defendants should produce the settlement information requested.



**Defendants' Position**

The Settlement Information is not relevant to any claim or defense in this case. Plaintiff's argument that its production will somehow allow him to determine "the extent to which Mr. Gurandiano continued to receive favorable treatment from Bank executives following his termination" is nonsensical. Plaintiff alleges that the Bank terminated Mr. Gurandiano's employment. Mr. Gurandiano brought a FINRA arbitration against DBSI, and DBSI vigorously defended against his claims (as is evident from the redacted answer Defendants produced to Plaintiff). Plaintiff merely speculates that a settlement amount might show "favorable treatment." However, disclosing the settlement amount would do nothing more than satisfy Plaintiff's rank curiosity. A host of considerations may drive a settlement, including whether the separated employee had deferred compensation and in what amount, the composition of the FINRA panel, counsel's valuation of the risk and burden on the business of proceeding, and the performance of the business at that time. Even if the Bank were compelled to produce a settlement agreement and amount, Plaintiff has no other settlement against which to compare what he speculates to be the Gurandiano settlement's "more favorable" terms.

*Rocky Aspen*, the sole case Plaintiff cites, is inapplicable. Unlike the parties to the settlement agreement in *Rocky Aspen*, Mr. Gurandiano and DBSI did not have the option of participating in a Court-supervised settlement conference or obtaining a court-ordered confidentiality agreement. They were not before a Court, but instead were before FINRA. DBSI and Mr. Gurandiano sought to protect the confidentiality of the Settlement Information by entering into a confidentiality agreement. DBSI should not be penalized for its inability to obtain a court-ordered confidentiality agreement due to a regulatory obligation to proceed before FINRA, particularly since FINRA (like other arbitral forums) is generally a far more confidential forum than a Court, and it was the parties' intent and expectation that their proceeding and its resolution remain confidential. In addition, the information that Plaintiff seeks implicates the private, sensitive, and personal confidential information of a non-party to this action.

In *Fireman's Fund Insurance Co. v. Cunningham Lindsey Claims Mgmt, Inc.*, 2005 U.S. Dist. LEXIS 32116 at * (E.D.N.Y. June 28, 2005), the plaintiff sought discovery of two arbitration awards arising from a prior arbitration brought by a non-party containing similar allegations against the defendant. The first award ("Phase I") determined liability and the second ("Phase II") determined damages. The Phase II award was subject to a confidentiality agreement entered into during the arbitration proceedings. The Court held that "There are important policy interests



involved in protecting the expectations of confidentiality belonging to parties who have chosen an alternative means of dispute resolution" and held that in order for the Phase II award to be discoverable the plaintiff had to show that the need for the information sought was compelling enough to outweigh the privacy interests involved.  Plaintiff did not meet its burden because it argued only that the award might be relevant for determining collateral estoppel, and the Court did not find that the monetary amount awarded (the subject of the Phase II award) was relevant to the collateral estoppel argument.

Similarly, the settlement amount is irrelevant to Plaintiff's claim of favorable treatment.  Defendants have already produced to Plaintiff information regarding their investigation of Mr. Gurandiano's conduct, in which Plaintiff was one of more than 14 people interviewed.  In addition to its redacted answer, Defendants produced the notes of the interviews conducted during the internal investigation of Gurandiano and made the investigators available to be deposed. Under these circumstances, additional discovery of the Settlement Information is not warranted.  *See Kalinauskas v. Wong*, 151 F.R.D. 363 , 367 (D. Nev. 1993) (plaintiff in sexual harassment suit sought discovery of terms of confidential settlement agreement resolving earlier sexual harassment case between her employer and a former employee.  Court allowed discovery on the factual information surrounding the prior action but ruled that the specific terms of the settlement would not be disclosed).

While the "good cause" standard in Fed. R. Civ. P. 26 (c) does not apply, good cause for issuance of a protective order exists.  As *Rocky Aspen* held, there is good cause for issuance of a protective order where a party shows that disclosure will result in a clearly defined, specific and serious injury.  2019 U.S. Dist. LEXIS at *8.  In addition to DBSI's privacy interests, here there is a specific, serious injury to the privacy interests of a non-party, Mr. Gurandiano, that would result from the disclosure of the Settlement Information.



The Parties look forward to providing the Court with more information about their positions at the telephone conference on October 17, 2019. In the meantime, please do not hesitate to contact us in the event the Court requires any additional information.

Respectfully submitted,

GOODSTADT LAW GROUP, PLLC                SEYFARTH SHAW LLP


__/s/ George Vallas_____             ___/s/ Cameron Smith_____
George Vallas, Esq.                      Cameron Smith, Esq.
Andrew Goodstadt, Esq.                   Chryssa V. Valletta, Esq.
520 Eighth Avenue, 14th Floor            620 Eighth Avenue
New York, New York 10018                 New York, New York 10018
gvallas@goodstadtlaw.com                 csmith@seyfarth.com
agoodstadt@goodstadtlaw.com              cvalletta@seyfarth.com
*Attorneys for Plaintiff*                *Attorneys for Defendants*