

**Manhattan**
520 Eighth Avenue, 14th Floor
New York, New York 10018
T: 646.430.8295  F: 646.430.8294

**Long Island**
910 Franklin Avenue, Suite 200
Garden City, New York 11530
T: 516.307.1880  F: 516.307.1879

**George D. Vallas**
gvallas@goodstadtlaw.com

October 23, 2019

**VIA ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

      Re:    <u>**Abromavage v. Deutsche Bank Securities Inc, et al., 18-cv-06621 (VEC)**</u>

Dear Judge Caproni:

As you know, we represent Plaintiff Neil Abromavage in the above-referenced matter. In accordance with the Court's directive during the October 17 discovery conference call, we write to provide excerpts from the July 26, 2019 deposition of Christine Berti, Esq. related to the Bank's investigation of Mr. Abromavage's retaliation complaint.

Although the credibility of that investigation is relevant to Defendants' Eleventh Affirmative Defense that the Bank made good faith efforts to enforce its anti-retaliation policies, Defendants nevertheless assert that Ms. Berti's investigation report, dated January 15, 2016 (the "Report"), is protected by the attorney-client and work-product privileges. Defendants argue, in part, that the affirmative defense does not waive the privilege because the deposition of Ms. Berti (and the anticipated deposition of her co-investigator Michelle Kershenbaum) give Plaintiff the "opportunity to ask questions about the factual nature of their investigation," including the "investigation notes and non-privileged emails" which Defendants have already produced. J. Ltr. re Disc. Disputes, Oct. 15, 2019 (ECF No. 31) (the "Joint Letter").

This partial production of investigation material not only raises the legal questions addressed in the Joint Letter, but is also inadequate as a matter of fact. The plethora of excerpts annexed hereto as **Exhibit 1** and summarized below illustrate Ms. Berti's inability to recall virtually *any* details from her investigation, including the meaning of her shorthand and ambiguous interview notes, her impressions of the credibility of interviewees, the documents she may (or may not) have reviewed, or what conclusions she reached when various interviewees made conflicting

factual assertions.[1] For instance, with respect to the interview of Mr. Abromavage on October 20, 2015, Ms. Berti could not recall (among other details):

- Whether Mr. Abromavage had been in discussions to move to another group (Tr. 150:16-19; Tr. 155:23-25; Tr. 156:15-17)
- Whether those discussions ceased after Mr. Gurandiano's termination (Tr. 151:6-12)
- Whether Mr. Abromavage was concerned about confidentiality (Tr. 158:15-159:11)
- The meaning of the entry "A couple of departures. One tech (prior FIG), of FIG" (Tr. 160:5-17)

With respect to Jeffrey Mortara (interviewed on October 28, 2015):

- Whether John Eydenberg told Mr. Mortara "You should assume I know all that's being said" (Tr. 171:14-172:11);
- The meaning of the entry "JM towed the line" (Tr.177:17-178:3);
- The meaning of the entry "JM thinks JE knew that they would be let go before they were" (Tr. 178:7-17);
- The meaning of the entry "JE – you were not a team player, what were you doing?" (Tr. 179:7-21);
- Mr. Eydenberg's communications with Mr. Mortara regarding Mr. Gurandiano's termination (Tr. 181:3-8);
- The meaning of the entry "Loyal players get resp." (Tr. 189:11-16);
- The meaning of the entry "NA – threatened by JG – he'd be gone," (Tr. 191:5-16; 191:25-192:17);
- The relevance of Mr. Mortara's statement "MH, CC, JG – all Canadian" (Tr. 195:9-17) .

With respect to Mark Hantho and John Eydenberg (both interviewed on December 3, 2015) and Jeffrey Bunzel (interviewed on December 8, 2015):

---

[1] Although extensive, these excerpts represent only a small sample of the testimony illustrating Ms. Berti's near total inability to remember the details of her investigation. These excerpts also omit a number of specific assertions of privilege by Defendants' counsel during the deposition. We can provide further excerpts if the Court requires.



- The meaning of "NA told MH <u>after</u> he went to HR, did you hear what happened? . . . [D]idn't say it was the wrong thing to do, just that it's important to know you did it." (Tr. 203:3-19)
- What Mr. Eydenberg meant by "NA had brought complaint" (Tr. 212:7-24)
- The meaning of "Post JG, JM, NA, Dan Jacobwitz, all expressed interest to be involved in some way. Don't think any of them did it with this motive." (Tr. 214:3-18)
- The meaning of "JE told them to keep mouth shut, because JG's allegations of disparagement, think a lot of people were told" (Tr. 226:16-227:5)
- The context of Mr. Bunzel's statement "Heard NA raised concerns about JG" (Tr. 230:23-25; Tr. 232:23-233:4)
- What job "opportunity" supposedly was "gone" because "NA didn't pursue aggressively as should have" (Tr.238:13-19)

In making a final determination, Ms. Berti testified that "we would have reviewed all the information given to us during the investigation," including "our interview of Mr. Abromavage and any information he provided to us in the course of the investigation, as well as information from other sources as part of the investigation. It was a review of a collection of information." (Tr. 190:2-23; Tr. 262:20-263:6). However, Ms. Berti was unable to recall what specific information she relied upon, or whether that information included documents. (Tr. 165:18-20).[2]

Plaintiff cannot test the veracity of the Bank's determination that he was not the victim of retaliation if he does not understand the factual basis of that determination, including (i) what facts were relied upon; (ii) the investigators' mental impressions, (iii) what credibility determinations were made, and (iv) what (if any) documents were reviewed. As the deposition of Ms. Berti makes clear, the Report is the only source of that information.[3] Without the Report, Mr. Abromavage will therefore be unable to challenge Defendants' assertion that the Bank made a good faith effort to enforce its anti-retaliation policies in response to his protected complaint.

---

[2] Defendants' counsel also instructed Ms. Berti on privilege grounds not to respond to the question "Would you have indicated what documents you relied upon to make that – to draw that conclusion in your report?" and made clear that he "was asserting the privilege over the contents of the report because it was provided to counsel in connection with providing legal advice." (Tr. 257:8-25).

[3] The fact that Defendants did not provide the Report for Ms. Berti to review in advance of her deposition in a calculated effort to maintain the privilege, as revealed by Defendants on the October 17 conference call, perhaps contributed to Ms. Berti's inability to testify about this information.



Honorable Valerie E. Caproni
October 23, 2019
Page 4

Accordingly, for the reasons set forth above and in the Joint Letter, Plaintiff respectfully requests that Defendants be ordered to produce the Report. We also note that the upcoming deposition of Ms. Kershenbaum, currently scheduled for October 25, 2019, will be impacted by the Court's ruling on this dispute. To obviate any privilege disputes during that deposition or any possibility the witness might have to be recalled, the Parties respectfully request a brief and final extension of the discovery deadline in this matter, from November 22, 2019 to December 15, 2019, so that Ms. Kershenbaum's deposition can be rescheduled to a date following the resolution of this dispute.

Respectfully submitted,

George Vallas


Encl.