

Seyfarth Shaw LLP
620 Eighth Avenue
New York, New York  10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5605

Writer's e-mail
casmith@seyfarth.com

October 28, 2019

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
New York, NY 10007

    Re:    <u>Neil Abromavage v. Deutsche Bank Securities Inc. et al (1:18-cv-06621)</u>

Dear Judge Caproni:

    We represent Defendants in the above-referenced action and write in response to Plaintiff's October 23, 2019 letter.

    The January 15, 2016 internal investigation report (the "Report") of Plaintiff's retaliation complaint to DBSI is protected by the attorney-client and work product privileges.  Those privileges should not be cast aside simply because Plaintiff is dissatisfied with Christina Berti, Esq.'s recollection of an investigation she conducted nearly four years before her deposition.

    Plaintiff's characterization of Ms. Berti's deposition transcript is highly misleading.  Ms. Berti testified at length regarding the investigation of Plaintiff's retaliation complaint.  She testified that she investigated Plaintiff's complaint, interviewed Plaintiff on October 20, 2015 via phone, he complained that he had experienced retaliation since August 2015, and she met with Plaintiff and Michele Kershenbaum regarding his complaint later in the day on October 20, 2015.  Ms. Berti testified that Plaintiff stated he felt that he was being treated differently because he participated in an investigation of Jason Gurandiano and said he had been excluded from certain meetings and activities; he was considering other positions at DBSI and his managers no longer supported his job change; he believed other people were aware that he had participated in the investigation regarding Mr. Gurandiano; he believes a senior executive told Jeffrey Mortara that he "knew everything;" and that she and Ms. Kershenbaum asked Plaintiff to identify DBSI employees involved in the alleged retaliation but that Plaintiff did not want to disclose any names to them.  Tr. 134:13-163:17.

    Ms. Berti testified that she and Ms. Kershenbaum interviewed Mr. Mortara, Mr. Hantho, Mr. Bunzel and John Eydenberg in their investigation.  Tr. 164:11-165:25.  Ms. Berti testified regarding the reasons she and Ms. Kershenbaum decided to interview those individuals, and the substance of



The Honorable Valerie E. Caproni
October 28, 2019
Page 2

those interviews.  For example, Mr. Mortara referred to "others who feel treated differently since JG left" and then mentioned "RG," whom Ms. Berti identified as Richard Gibb, and "NA," and that Mr. Mortara said "loyal players get responsibility." Tr. 169:17-171:8; 186:20-.189:25.  Ms. Berti testified Mr. Hantho said he and Mr. Eydenberg were Mr. Gurandiano's mentors, and that Mr. Abromavage had pursued and could continue to explore other opportunities within the Bank, which would make sense given the reduced fee pool in the FIG and ECM groups.  Tr. 200:14-202:6, 208:4-13.

Ms. Berti also testified that she interviewed Mr. Eydenberg after Mr. Mortara and Mr. Hantho.  Mr. Eydenberg referred to a disagreement regarding a client presentation to SoFi that had arisen in the Gurandiano investigation, and he pointed to Mr. Gibb leaving for a role in Asia as a reason why Mr. Abromavage's potential job move might not have materialized.  Tr. 211:2-212:17; 225:21-226:3.

Ms. Berti testified that Mr. Bunzel said he had heard Plaintiff had raised concerns about Mr. Gurandiano with HR, and also mentioned an opportunity for another role that Plaintiff could have moved to and that Mr. Hantho had tried to help Plaintiff move to a role in banking in Spec Fin Asset Management. 228:13-229:20; 237:15-241:4.

Ms. Berti also testified to the reasons she concluded at the end of the investigation that there had been no retaliation in violation of DBSI's policies.  Tr. 262:15-263:6.  She testified that Plaintiff said during the close-out call "nothing else to say at this time, though not necessarily done either" and that she had another conversation with Plaintiff after the close-out call in which Plaintiff mentioned Mr. Mortara's exit interview and Plaintiff also said that "comp is coming up and we'll see what happens" (Ms. Berti testified that she understood that "comp is coming up" referred to communications regarding year-end compensation and salary discussions). Tr. 265:9-266:3; 266:19-269:14.

Ms. Berti gave exhaustive testimony regarding the investigation of Plaintiff's complaint of retaliation (again, an investigation she conducted nearly four years ago) for well over seven hours on the record.  At no point during the deposition did Plaintiff's counsel avail himself of the opportunity to raise with the Court any concern he might have had with the assertion of privilege over the Report or elements of Ms. Berti's testimony.  If he believed that he could not conduct a thorough deposition because of an improper assertion of privilege, it was incumbent upon him to call the Court to obtain a ruling on the issue then and there.  Instead, he deposed Ms. Berti for over seven hours on the record and now wants a second bite at the apple.

To provide her extensive and detailed testimony, Ms. Berti prepared for her deposition by reviewing her notes of her interviews with Plaintiff, Mr. Hantho, Mr. Bunzel and Mr. Eydenberg (Tr. 183:13-184:23), and refreshed her recollection as needed during her deposition by reviewing those notes.  The notes, rather than the Report, are the best evidence of the facts she investigated. It would not be her general practice to review an investigative report to refresh her recollection, because she considers her notes to be the best recording of her interviews.  If Defendants are ordered to waive attorney-client and work product privilege simply because Ms. Berti may have an imperfect



recollection several years after the relevant events occurred, parties in every case where a witness has imperfect recollection may seek privileged documents to ensure that the witness's recollection is complete.  In *2M Asset Mgmt., LLC v. NetMass, Inc.*, 2006 U.S. Dist. LEXIS 90994, at *4 (E.D. Tex. Dec. 18, 2006), the Court denied a similar request by a defendant that privileged documents be available at a deposition so the witness could review them as needed to refresh his recollection.[1]  The Court held that "[a]bsent waiver, attorney-client privileged documents cannot be compelled," warned that the documents could become discoverable if they were actually used to refresh the witness's recollection and noted that the request should be denied on the broader ground of "sound judicial administration" because similar requests could be made in all cases if granted in that case.  This Court should follow the rationale of *2M Asset Mgmt LLC* and deny Plaintiff's request.

Moreover, Plaintiff's rationale for the production of the Report is that it may refresh Ms. Berti's recollection, but *Ms. Berti does not believe* that the Report will refresh her recollection. When Plaintiff's counsel asked if there was anything that would refresh her recollection, she identified her notes (Tr. 156:7-8; 195:5-8.) and *did not* state that the Report (or any other documents besides her notes) would refresh her recollection. When Plaintiff's counsel asked Ms. Berti twice if the Report would refresh her recollection, she responded "I don't recall if it would or it wouldn't." and "I don't know." Tr. 210:21-25; Tr. 243:8-10.  Ms. Berti never testified that the Report would refresh her recollection, and Plaintiff is only speculating that it might.

Finally, even if the Court determines that Ms. Berti should review the Report to refresh her recollection, that would not justify the *production* of the Report to Plaintiff.  In *Laxalt v. McClatchy*, the deponent testified that she could not recollect facts without referring to privileged documents (in contrast to Ms. Berti, who *did not* testify that review of the Report would refresh her recollection). 116 F.R.D. 438, 453 (D. Nev. 1987).  The Court ordered that the witness bring the documents to her deposition and refresh her recollection with the documents as necessary, but noted defendants' objection that if the witness refreshed her recollection with the documents, they might become discoverable pursuant to Fed. R. Evid. 612.  The Court held that because the witness was being ordered to use the documents to refresh her recollection, rather than voluntarily choosing to use them to refresh her recollection, "the interest of justice militates against the disclosure of the documents."  The Court in the *Laxalt* case further held that:

> Finding that [deponent] had waived the work-product privilege by complying with this order would be tantamount to ordering a waiver of the privilege. This, of course, is beyond the power of the Court, except in the most unusual of cases. Thus, by complying with the order of this Court that she refresh her recollection with such privileged documents as necessary, the deponent will not waive the work product or attorney client privileges.

---

[1] The defendant in that case did not , unlike Plaintiff, request to examine or see the privileged documents.

The Honorable Valerie E. Caproni
October 28, 2019
Page 4

*Id.* at 454.  As in *Laxalt*, Plaintiff's request for production of the Report should be denied.[2]  This Court should not take the extraordinary step of ordering the production of a privileged document simply because Plaintiff believes (contrary to the record) that it may help refresh Ms. Berti's recollection.

                Respectfully Submitted,

                SEYFARTH SHAW LLP

                */s/ Cameron Smith*

                Cameron Smith

---

[2] Defendants submit that following the procedure in *Laxalt*, requiring Ms. Berti to review the Report and to reappear for a deposition, would be a waste of time and resources because, unlike the deponent in *Laxalt*, Ms. Berti did not testify that review of the Report would refresh her recollection.

54572798v.1