USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/11/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
NEIL ABROMAVAGE,

                       Plaintiff,

           -against-

DEUTSCHE BANK SECURITIES INC.;
JEFFREY BUNZEL, in his official and individual
capacities; and MARK HANTHO, in his official
and individual capacities,

                       Defendants.
-------------------------------------------------------------- X

18-CV-6621 (VEC)

MEMORANDUM ORDER
AND OPINION

VALERIE CAPRONI, United States District Judge:

The parties dispute whether Defendant Deutsche Bank Securities Inc. ("DBSI"), by raising a good-faith defense against punitive damages under Title VII of the Civil Rights Act of 1964, has waived any privileges applicable to an investigation report ("the Report"), which was prepared by DBSI's in-house counsel after investigating Plaintiff's complaints of retaliation. Because the so-called *Kolstad* defense places DBSI's knowledge and mental state at issue, the Court concludes that DBSI, should it choose to continue advancing the defense, will waive any of its privileges and protections as to the Report. *See generally Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

## BACKGROUND

Plaintiff Neil Abromovage began working for DBSI in 2000 as an analyst and was eventually promoted to managing director. Compl. (Dkt. 1) ¶¶ 15, 17; Answer (Dkt. 12) ¶¶ 15, 17. In 2015, Jason Gurandiano, another DBSI managing director, was accused of workplace discrimination. Compl. (Dkt. 1) ¶¶ 18–19; Answer (Dkt. 12) ¶ 19. DBSI conducted an internal

investigation of the matter. Compl. (Dkt. 1) ¶ 19; Answer (Dkt. 12) ¶ 19. During an interview conducted as part of that investigation, Plaintiff stated that he had witnessed multiple instances of racist behavior by Gurandiano. Compl. (Dkt. 1) ¶ 20. On July 27, 2015, DBSI terminated Gurandiano's employment. Compl. (Dkt. 1) ¶ 21; Answer (Dkt. 12) ¶ 21.

Plaintiff alleges that his direct supervisors, Defendants Jeffrey Bunzel and Mark Hantho, retaliated against him as a result of his role in the Gurandiano investigation. Compl. (Dkt. 1) ¶ 22. Bunzel and Hantho were allegedly motivated by their close relationship with Gurandiano. Compl. (Dkt. 1) ¶ 23. In response to the perceived retaliation, Plaintiff filed complaints with DBSI's human resources department in August 2015. Compl. (Dkt. 1) ¶ 40; Answer (Dkt. 12) ¶ 40; Dkt. 31 at 2.

DBSI then conducted another investigation, this time into Plaintiffs' complaints of retaliation. Dkt. 31 at 2; Dkt. 33 at 1. After several witness interviews, the investigation culminated in the Report, dated January 15, 2016, which concluded that Defendants Bunzel and Hantho had not retaliated against the Plaintiff in violation of DBSI policies. Dkt. 31 at 2. The Report was drafted by DBSI's in-house attorney, Christina Berti, at the request of DBSI's head of employment law. Dkt. 31 at 4.

After the investigation concluded, DBSI allegedly continued to retaliate against Plaintiff, including by denying him a bonus, before ultimately terminating his employment on August 4, 2016. Compl. (Dkt. 1) ¶¶ 55, 64. On July 23, 2018, Plaintiff filed this lawsuit, alleging retaliation in violation of federal, state, and local law. *See generally* Compl. (Dkt. 1).

Plaintiff seeks, among other relief, punitive damages, which are available under Title VII of the Civil Rights Act of 1964 if the employer acted "with malice or with reckless indifference" to Plaintiff's rights. *See* 42 U.S.C. § 1981a(b); *Kolstad*, 527 U.S. at 535. As a defense against

punitive damages, DBSI pleaded, as its Eleventh Defense, that it has "maintained and complied with well-established policies, programs, and procedures for the prevention and detection of unlawful harassment, discrimination, or retaliatory conduct by its employees." *See* Answer (Dkt. 12) at 14. DBSI refers to its "Eleventh Affirmative Defense" as "the *Kolstad* defense." Dkt. 31 at 5.

During discovery, DBSI produced the interview notes taken by Berti and DBSI's head of human resources, Michele Kershenbaum, as well as certain "nonprivileged" emails. Dkt. 31 at 1–2. DBSI refused, however, to produce the Report itself, on the basis of attorney-client privilege and work-product protection. *See* Dkt. 31 at 4. Plaintiff now seeks an order compelling production of the Report.

## DISCUSSION

The Report is a communication between an attorney, Berti, and her client, DBSI, about the lawfulness of certain actions taken by DBSI's employees. While Plaintiff contends that the Report was not produced in anticipation of litigation, that consideration is relevant only to work-product protection. *See* Dkt. 31 at 2 & n.1; Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"); *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998). Plaintiff does not appear to dispute that the Report, absent a waiver, is otherwise protected by attorney-client privilege. The Court need not and does not decide whether DBSI has met its burden of establishing the elements of attorney-client privilege[1] or work product

---

[1] The party asserting attorney-client privilege bears the burden of establishing the privilege's "essential elements"—namely that the communication at issue was "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). The Court notes that DBSI has not represented to the Court that the Report was intended to be or was in fact maintained in confidence. *See generally* Dkts. 31, 33.

doctrine because, even assuming DBSI has done so, it will waive any privileges as to the Report if it persists in pressings its *Kolstad* defense.

A "privilege may implicitly be waived when defendant asserts a claim [or defense] that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also* Fed. R. Evid. 502(a). The at-issue waiver rule[2] aims to prevent the unfairness that results "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)). Merely pleading a claim or defense does not operate as a waiver of all protected information relevant to the claim or defense—unless the party asserting the privilege *relies*, to some extent, on the protected information to advance that claim or defense. *See id.* at 229 ("[P]rivileged information may be in some sense *relevant* in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue . . . . We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense." (emphasis in original)).

The Second Circuit has not, however, specified the degree of reliance sufficient to trigger an at-issue waiver. *See id.* at 229 ("We decline to specify or speculate as to what degree of reliance is required."). As a result, district courts must assess the potential unfairness to litigant(s) under the circumstances of each case. *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000) ("Whether fairness requires disclosure has been decided by the courts on a

---

[2] An at-issue waiver is only one form of an implied waiver. *NYU Winthrop Hosp. v. Microbion Corp.*, — F. Supp. 3d —, No. 17-CV-6114, 2019 WL 4535570, at *2 (E.D.N.Y. Sept. 19, 2019) (distinguishing at-issue waiver from waiver by selective disclosure).

4

case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.").

Nevertheless, some cases remain clear-cut. Asserting an advice-of-counsel defense, for instance, is a "quintessential" at-issue waiver because good-faith reliance on privileged information is a required element of the defense. *In re Cty. of Erie*, 546 F.3d at 228 (citation omitted); *see United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) ("[T]o benefit from an advice-of-counsel defense, a party must show that he (1) 'honestly and in good faith' sought the advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful.").

An advice-of-counsel defense is merely one example of a broader rule in this circuit, which applies to other defenses that rely on the defendant's good faith. The Second Circuit has explained that "the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege." *In re Cty. of Erie*, 546 F.3d at 228–29. In *Bilzerian*, a defendant sought to testify on direct examination that he did not intend to violate securities laws and that he believed his actions to be lawful; at the same time, the defendant moved to preclude any cross-examination on conversations he had with his attorney regarding the legality of his schemes. 926 F.2d at 1291–92. The district court denied the defendant's motion, holding that, if he were to testify about his good faith compliance with the securities laws, he would open the door to questions about relevant communications with his attorney. *Id.* at 1291. The Second Circuit affirmed, holding that the defendant's proposed "testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue."

5

*Id.* at 1292. In other words, a defendant invoking his good faith may place his privileged communications at issue even if he does not specifically plead or argue that he relied on an attorney's advice. *See Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V.*, No. 94-CV-4725, 1997 WL 272405, at *4 (S.D.N.Y. May 21, 1997) ("In *Bilzerian*, the Second Circuit upheld the trial court's determination that defendant's testimony that he in fact believed his conduct not to be in violation of the securities laws would waive attorney-client privilege, even if the defendant did not expressly testify that he relied on any advice from his attorney.").

DBSI's Eleventh Defense, which DBSI refers to as the *Kolstad* defense, Dkt. 31 at 5, is a good-faith defense. Specifically, it is an "affirmative defense" that "insulates an employer from punitive damages liability if it has made 'good faith efforts to enforce an antidiscrimination policy.'" *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001) (quoting *Kolstad*, 527 U.S. at 546). "This defense requires an employer to establish both that it had an antidiscrimination policy and made good faith effort to enforce it." *Id.* The *Kolstad* defense "focus[es] on the actor's state of mind," and precludes punitive damages unless the employer "discriminate[d] in the face of a perceived risk that its actions [would] violate federal law." *Id.* at 384 (citing *Kolstad*, 527 U.S. at 535–36). Thus, in this case, to prevail on its *Kolstad* defense, DBSI must show that it had an internal policy that prohibits unlawful retaliation and that it implemented the policy in good faith when it investigated Plaintiff's complaints and found no retaliation. *See* Answer (Dkt. 12) at 14 (asserting that DBSI "maintained and complied with well-established policies, programs, and procedures for the prevention and detection of unlawful harassment, discrimination, or retaliatory conduct by its employees"); *Zimmermann*, 251 F.3d at 384 ("An employer [should not be liable for punitive damages] if he was 'unaware of the relevant federal prohibition' or acted 'with the distinct belief that its discrimination is lawful.'"

(quoting *Kolstad*, 527 U.S. at 537)).  For that reason, the relevance and significance of DBSI's knowledge of the law and its belief as to the lawfulness of Defendants' actions are at least as central to DBSI's *Kolstad* defense as the communications were to the defendant's *mens rea* in *Bilzerian*.

Because the *Kolstad* defense relies on DBSI's subjective belief as to the lawfulness of its actions and those of its employees, relevant communications between DBSI and its in-house counsel must be disclosed to avoid the unfairness contemplated by the waiver rule.  Although DBSI claims that it is not specifically relying on the advice of its in-house counsel in order to advance its *Kolstad* defense, express reliance is not necessary to trigger the waiver rule.  *See Kidder*, 1997 WL 272405 ("Although the quintessential example of [an] 'at issue' waiver [] is an instance in which a party expressly asserts reliance on counsel, the principle sweeps more broadly.").  Indeed, courts in this circuit have recognized that "waiver may apply even if the defendant claims to have ignored the advice of counsel because '[e]ven if . . . [Defendant's] beliefs about the lawfulness of his conduct were actually separate from legal advice . . . Plaintiffs still would be entitled to know if [Defendant] ignored counsel's advice."  *Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 611 (S.D.N.Y. 2014) (quoting *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1642434, at *3 (S.D.N.Y. Apr. 20, 2011)); *see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 754 (2d Cir. 1996) ("[T]he *failure* to follow the advice of counsel given before the infringement must factor into an assessment of an infringer's bad faith." (emphasis in original)).  Under the undisputed facts of this case, DBSI's efforts to comply with its anti-retaliation policy consisted of an investigation conducted by in-house counsel, who then drafted a report concluding that Plaintiff was not retaliated against.  While DBSI's answer does not plead "advice of counsel" or

"good faith" using those words, DBSI is necessarily relying, to some extent, on the actions and recommendations of its in-house counsel to prove that it adhered to anti-retaliation laws and policies in good faith.[3] *See Scott*, 67 F. Supp. 3d at 614 ("[A]rtful pleading cannot negate an element of a statutory defense, especially here, where it is evident that [the Defendant] did in fact have the advice of counsel on the very topic at issue.")). Accordingly, if DBSI intends to advance the *Kolstad* defense at summary judgment or at trial, Plaintiff would be entitled to discover the communications necessary to rebut DBSI's assertion of good faith. *See id.* ("[I]f (1) a defendant claims the defense of good faith, and (2) that claim can only be scrutinized by examining the disputed communications, then that defendant has waived the privilege. 'Forfeiture of this type is premised on the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim.'" (quoting *John Doe Co.*, 350 F.3d at 304) (emphasis in *John Doe*)).

DBSI argues that withholding the Report is not unfair because DBSI does not "assert that they relied on their counsel's advice in conducting an investigation that determined Plaintiff had not been subject to retaliation. That was the conclusion Ms. Berti and Ms. Kershenbaum reached." Dkt. 31 at 5. DBSI's statement appears to be purposely qualified in a narrow and confusing manner; the Court construes DBSI's additional argument to be that it did not rely on advice of counsel to commence the investigation into Plaintiff's complaints. Even if the investigation were not the product of advice of counsel, conducting an investigation is not, standing alone, sufficient to state a *Kolstad* defense. An employer certainly cannot shield itself

---

[3] Based on DBSI's investigation of complaints against Gurandiano and its investigation into Plaintiff's complaints, DBSI appears to have an established policy or practice of conducting an internal investigation to ascertain the facts and then deciding whether further action should be taken against the accused based on in-house counsel's assessment of the law and the facts. In that context, DBSI cannot establish that it "complied with [its] well-established policies, programs, and procedures" in this case without arguing that it performed an investigation and reached its conclusion of no retaliation in good faith. *See* Answer (Dkt. 12) at 14.

8

from punitive damages simply by opening an investigation—and then burying or distorting unfavorable evidence. That would instead be a classic example of acting with "malice" or "reckless indifference." *See Kolstad*, 527 U.S. at 535. Rather, an employer's good faith must be maintained throughout the process, which makes DBSI's ultimate assessment of the evidence it uncovered and its rationale for finding no retaliation critical to the *Kolstad* defense. And as to those ultimate questions, DBSI appears to rely on the in-house counsel's report to justify not taking remedial action against Bunzel and Hantho, Plaintiff's supervisors.

DBSI also argues that production of the Report is unnecessary because Plaintiff has received the interview notes produced during the investigation and has also been able to depose the investigators. The interview notes, however, appear only to be the investigators' contemporaneous record of what transpired during witness interviews. *See* Dkt. 33 at 2. While the scope and depth of DBSI's investigation are certainly relevant to prove good faith, just as significant is the investigators' and DBSI's assessment of the totality of the record, which is captured only in the Report. To the extent that the final assessment was deficient because it omitted or failed to consider key facts favorable to Plaintiff, obviously misapplied the law, or in other ways cast doubt on the fairness of DBSI's conclusion(s), then it is relevant to rebut DBSI's good-faith defense. And contrary to DBSI's claim that Berti has "testified to the reasons she concluded . . . that there had been no retaliation," the relevant portion of the deposition transcript cited by DBSI contains only a one sentence answer—that Berti's "conclusions [were] based upon a review of all the information we received during the course of our investigation, and that included our interview of [Plaintiff] and any information he provided to us in the course of the investigation, as well as information from other sources." Dkt. 33 at 2 (citing Berti Dep. Tr. 262:15–263:6). Plainly, that response does not provide a rationale and does not allow Plaintiff to

9

test or refute Defendants' claim that it reached the no-retaliation conclusion in good faith. Alternatively, if Berti had testified about the reasons for her conclusion, then her testimony would have waived any privilege over both the factual recitations and opinion statements in the Report. Either way, the Court sees no basis for withholding production of the Report.

DBSI cites an extra-circuit district court opinion, which held that attorney-client privilege is waived by the assertion of a good-faith defense only if the defendant expressly invokes advice of counsel to advance the claim of good faith. *See Butterworth v. Lab. Corp. of Am. Holdings*, No. 08-CV-411, 2010 WL 11470895, at *6 (M.D. Fla. Dec. 2, 2010) ("Defendant has not relied on, and does not intend to rely on . . . deposition testimony referencing [] conversations with in-house counsel to prove Defendant acted in good faith in its compliance with Title VII."). The Court in *Butterworth*, however, was not bound by *Bilzerian*, a Second Circuit decision that this Court is required to apply. *See id.* Moreover, *Butterworth* is contrary to the predominant approach taken by courts in this circuit. *See Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) ("[C]ourts within this Circuit, relying on *Bilzerian*, have reaffirmed the broader principle that forfeiture of the privilege may result where the proponent asserts a good faith belief in the lawfulness of its actions, even without expressly invoking counsel's advice.") (collecting cases). DBSI's only other authority is another extra-circuit decision, which does not even address at-issue waivers. *See generally Mackey v. Staples the Office Superstore LLC*, No. 09-CV-23, 2010 WL 9523829 (D.N.M. Feb. 12, 2010). In sum, Defendants have not provided any authority that this Court may rely on to find that DBSI has not impliedly waived its privileges as to the Report.

For those reasons, the Court holds that DBSI, if it proceeds with the *Kolstad* defense, will impliedly waive any privileges or protections as to the Report, to the extent that the Report recounts the facts uncovered during the internal investigation into Plaintiff's claims of

retaliation, assesses the legal merits of Plaintiff's claims of retaliation, recounts or evaluates DBSI's anti-retaliation policies or procedures, addresses Defendants' conformity with those policies or procedures, discusses the reasons for the no-retaliation conclusion, or recommends remedial actions that were not taken by DBSI. To the extent that DBSI believes that the Report contains subject matter other than the foregoing categories that should be protected from disclosure, DBSI must submit the Report to the Court for *in camera* review, with the proposed redactions highlighted and explained.[4] Alternatively, DBSI may choose to withdraw its Eleventh Defense and obviate the need for the production of the Report.[5]

## CONCLUSION

For the foregoing reasons, no later than **December 16, 2019**, DBSI must either produce the full and unredacted Report to Plaintiff; submit the Report with proposed redactions to the Court for *in camera* review; or withdraw its Eleventh Defense.

**SO ORDERED.**

**Date: December 11, 2019**
**New York, New York**

VALERIE CAPRONI
United States District Judge

---

[4] DBSI must also carry its burden of showing that the elements of any relevant privilege have been established.

[5] If the defense is withdrawn, Plaintiff would not suffer any apparent prejudice or other unfair circumstance that would justify production of the Report.